# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | | |
|---|---|---|
| **PIERRE THERIOT**, | ) | |
| | ) | CIVIL ACTION NO.: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **AYSA HOSPITALITY, LLC**; | ) | JURY TRIAL DEMANDED |
| **HSNT LODGING, LLC**; | ) | |
| **CHOICE HOTELS** | ) | |
| **INTERNATIONAL, INC.; and** | ) | |
| **MAHI315, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Pierre Theriot files this lawsuit against Defendants Aysa Hospitality, LLC ("Aysa"); HSNT Lodging, LLC ("HSNT"); Choice Hotels International, Inc. ("Choice Hotels"), and MAHI315, LLC ("MAHI") (collectively, "Defendants") for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and Georgia law.

## SUMMARY

1.    From the first day Mr. Theriot began working at the front desk of Defendants' hotel, his former employers subjected him to sexually hostile working environment, including sexual advances, harassment, and assault.

-1-

2.    During his first shift, Mr. Theriot's transgender supervisor watched him change, propositioned him, groped him, forced him to view pornographic images of herself, attempted to touch his penis, and told him he owed her sex in exchange for being hired.

3.    Mr. Theriot rejected her advances and clearly communicated the harassment and advances were unwelcome.

4.    When Mr. Theriot complained to Defendants about the sexual harassment and mistreatment, Defendants did nothing, telling him that the issue was between him and his harasser.

5.    The harassment continued and worsened and progressed to sexual assaults.

6.    Mr. Theriot's employers, the Defendants, continued to do nothing.

7.    When Mr. Theriot stated his intent to file a Charge of Discrimination with the Equal Employment Opportunity Commission, Defendants cut his hours in half and constructively discharged him.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over the Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), as well as 42 U.S.C. § 2000e-5(f)(3).

9.    This Court has supplemental jurisdiction over Mr. Theriot's state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this District and Division under 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices giving rise to Mr. Theriot's claims occurred in this judicial district.

11.     Venue is also proper in this District and Division under 42 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Mr. Theriot's claims occurred in this judicial district and division.

## THE EEOC

12.     Mr. Theriot has satisfied all applicable conditions precedent for filing this action.

13.     On June 11, 2025, Mr. Theriot filed Charges of Discrimination with the U.S. Equal Employment Opportunity Commission against Defendants Aysa, HSNT, and Choice Hotels.

14.     On June 25, 2025, Mr. Theriot received notices of his right to sue Defendants Aysa, HSNT, and Choice Hotels.

15.     On August 11, 2025, Mr. Theriot filed a Charge of Discrimination against Defendant MAHI.

16.     On August 19, 2025, Mr. Theriot received a notice of his right to sue Defendant MAHI.

## PARTIES

17.     Mr. Theriot is a male who resides in the State of Georgia.

18. Defendants collectively own and operate a hotel located at 2175 Church Road Southeast, Syrma Georgia 30080, which uses the name "Country Inn & Suites by Radisson, Smyrna – Atlanta Northwest" (the "Hotel").

19. Defendant HSNT is a Georgia corporation with a principal place of business in Lithia Springs, Georgia.

20. Defendant HSNT owns, operates, and/or manages multiple hotels in the Atlanta area, including the Hotel.

21. Defendant Aysa is a Georgia corporation with its headquarters in Lithia Springs, Georgia.

22. Defendant Aysa owns, operates, and/or manages multiple hotels in the Atlanta area, including the Hotel.

23. Defendant Choice Hotels is a Delaware corporation with its principal place of business in North Bethesda, Maryland.

24. Defendant Choice Hotels owns and/or manages multiple hotels under a variety of brands, including the Radisson brand.

25. The Hotel is one of the hotels owned, operated, and/or managed by Defendant Choice Hotels.

26. Defendant MAHI is a Tennessee corporation with a principal place of business in Smyrna, Georgia.

-4-

27. Defendant MAHI owns, operates, and/or manages multiple hotels in the Atlanta area, including the Hotel.

28. The listed address for Defendant MAHI's principal place of business is the same as the listed address for the Hotel.

29. Upon information and belief, and in the alternative, Defendant MAHI is the successor in interest of Defendant HSNT.

30. Upon information and belief, and in the alternative, Defendant MAHI is the successor in interest of Defendant Aysa.

## MANY COMPANIES, ONE EMPLOYER

31. With respect to operation of the Hotel, the Defendants were an integrated employer.

32. At all relevant times, the same individuals acted as managers and/or decisionmakers for all Defendants.

33. At all relevant times, Defendants Aysa, HSNT, and MAHI shared owners.

34. At all relevant times, Defendants Aysa and HSNT shared a registered agent.

35. At all relevant times, Defendants Aysa and HSNT shared addresses.

36.     At all relevant times, Defendants Aysa, HSNT, and MAHI jointly owned and managed the Hotel, hired employees, set working conditions, and controlled labor relations.

37.     At all relevant times, alongside Aysa, HSNT, and MAHI, Defendant Choice Hotels exercised control over material aspects of Hotel operations, including, for example, the employment relationship with Mr. Theriot.

38.     At all relevant times, Defendants utilized the same or substantially similar policies, practices, and procedures such that all Defendants appeared to act as one single entity.

39.     At all relevant times, the Defendants inseparably were intertwined with respect to negotiations, operations, and employment issues at the Hotel.

40.     At all relevant times, the same individuals made all relevant employment decisions on behalf of all Defendants with respect to the Hotel.

41.     At all relevant times, Defendant Choice Hotels exercised the right to control the manner and means by which the Hotel operated, including with respect to employment relationships and related issues at the Hotel.

42.     In the alternative, Defendants Aysa, HSNT, and MAHI were an integrated employer and Defendant Choice Hotels was a joint employer with that integrated employer.

-7-

## FACTUAL ALLEGATIONS

### *Mr. Theriot applies to the Hotel*

43.    In March 2025, Mr. Theriot applied for a front desk position at the Hotel.

44.    Mr. Theriot was qualified for the front desk position.

45.    Shortly after Mr. Theriot applied, the Hotel's Assistant Manager (the "Supervisor") interviewed him for the front desk position.

46.    The Supervisor offered Mr. Theriot the job at the conclusion of the interview.

47.    Mr. Theriot began working at the Hotel as a front desk assistant on approximately March 31, 2025.

48.    Mr. Theriot worked under the direct supervision of the Supervisor.

49.    From the beginning of his employment at the Hotel and continuing until his constructive discharge, the Supervisor relentlessly sexually harassed Mr. Theriot.

### *Mr. Theriot's First Shift*

50.    At the beginning of Mr. Theriot's first shift on approximately March 31, 2025, the Supervisor gave Mr. Theriot a uniform shirt that he was required to wear for his shift.

51.    The Supervisor watched Mr. Theriot change shirts.

52. The Supervisor made sexual grunting and moaning noises at Mr. Theriot while he changed.

53. On the same day, the Supervisor called Mr. Theriot into her office and conducted a sexually explicit conversation.

54. The Supervisor asked Mr. Theriot, "Am I attractive to you?"

55. The Supervisor told Mr. Theriot she had previously performed in pornographic materials.

56. The Supervisor told Mr. Theriot that she had previously had sex with someone who had a 13-in penis.

57. The Supervisor then handed Mr. Theriot her phone and forced him to watch a video of her masturbating.

58. Mr. Theriot did not want to experience any of this.

59. The Supervisor's conduct during Mr. Theriot's first shift made him extremely uncomfortable.

60. Mr. Theriot found the Supervisor's conduct shocking and outrageous.

61. Mr. Theriot dropped the Supervisor's phone and left the Supervisor's office.

62. Mr. Theriot was shocked.

63. Mr. Theriot returned to the front desk and tried to continue working.

64.    Throughout the remainder of Mr. Theriot's first shift, the Supervisor repeatedly touched Mr. Theriot's hair, rubbed his shoulders, made comments about his looks, and made sexual advances towards him.

65.    Mr. Theriot rejected the Supervisor's advances and made it clear that they were unwelcome.

66.    Mr. Theriot was uncomfortable and found the Supervisor's conduct extreme and outrageous.

### *Mr. Theriot's Subsequent Shifts are no Better*

67.    The Supervisor continued this outrageous and sexually harassing conduct for the remainder of Mr. Theriot's shifts at the Hotel.

68.    After March 31, 2025, Defendants scheduled Mr. Theriot to work several shifts at the Hotel (the "Subsequent Shifts").

69.    From approximately March 31, 2025, until approximately late April 2025, Defendants scheduled Mr. Theriot to work around forty hours per week.

70.    For the Subsequent Shifts, Mr. Theriot was always scheduled to work alongside the Supervisor.

71.    During the Subsequent Shifts, the Supervisor frequently and repeatedly made harassing statements to Mr. Theriot related to sex, the Supervisor's sexual desires, Mr. Theriot's attractiveness, and the Supervisor's sexual history.

72.    During the Subsequent Shifts, the Supervisor frequently and repeatedly made comments about Mr. Theriot's physical appearance.

73.    During the Subsequent Shifts, the Supervisor frequently and repeatedly rubbed Mr. Theriot's hair, arms, and shoulders.

74.    During the Subsequent Shifts, the Supervisor frequently and repeatedly made unwelcome sexual advances towards Mr. Theriot.

75.    The Supervisor told Mr. Theriot that she hired him because she found him attractive.

76.    Mr. Theriot repeatedly told the Supervisor that he was uncomfortable with the sexual comments and requested that they stop.

### The Supervisor Escalates her Harassment

77.    Shortly before April 6, 2025, Mr. Theriot experienced car issues.

78.    The Supervisor repeatedly tried to convince Mr. Theriot to ride with her.

79.    By approximately April 6, 2025, Mr. Theriot was experiencing financial stress from paying for alternative transportation to and from work.

80.    On approximately April 6, 2025, to save money, Mr. Theriot accepted the Supervisor's offer to drive him home after work.

81.    The Supervisor did not drive Mr. Theriot home, as offered. Instead, the Supervisor drove Mr. Theriot to her house.

82. The Supervisor told Mr. Theriot she needed to "check something" and told him to come inside and wait on her couch.

83. Mr. Theriot was extremely uncomfortable.

84. The Supervisor then sat on the couch next to Mr. Theriot and immediately began rubbing his inner thigh—attempting to touch his penis—and saying how attractive she found Mr. Theriot.

85. The Supervisor's actions were acts of sexual assault and violence and caused Mr. Theriot to be afraid and to fear continue and further sexual assault and violence.

86.

87. Mr. Theriot immediately told the Supervisor not to touch him.

88. The Supervisor's advances were unwelcome in the extreme.

89. The Supervisor said that she would not have given Mr. Theriot a ride home if she knew he was going to resist her advances.

90. Mr. Theriot left the Supervisor's house and rode home with a friend.

### The Harassment Continues

91. After the incident at the Supervisor's house, Defendants continued to schedule Mr. Theriot and the Supervisor to work together.

92. During Mr. Theriot's shifts, the Supervisor frequently and repeatedly made verbal and physical sexual advances towards Mr. Theriot.

-11-

93. During Mr. Theriot's shifts, the Supervisor frequently and repeatedly touched Mr. Theriot's hair, arms, and shoulders.

94. During his shifts, Mr. Theriot frequently and repeatedly told the Supervisor to stop touching and harassing him, and he made it clear that the harassment was unwelcome.

95. During Mr. Theriot's shifts, the Supervisor made inappropriate sexual comments about and to Mr. Theriot in front of the Hotel's guests.

### Mr. Theriot's Multiple Complaints

96. During his employment at the Hotel, Mr. Theriot complained to Defendants about the Supervisor's sexual harassment multiple times.

97. Mr. Theriot complained to the Hotel's General Manager, Kavyesh Patel ("Patel"), about the Supervisor's sexually harassing behavior.

98. Patel acts on behalf of all Defendants with respect to management and operation of the Hotel.

99. Patel has an ownership interest in multiple Defendants, including Defendants Aysa, HSNT, and MAHI.

100. Patel took no action in response to Mr. Theriot's multiple complaints regarding the Supervisor.

101. Patel told Mr. Theriot to address his problems regarding the Supervisor directly to the Supervisor, herself.

102. On approximately April 9, 2025, following Patel's response to his complaint, Mr. Theriot spoke directly to the Supervisor once again about her unwelcome sexually harassing behavior.

103. On approximately April 9, 2025, Mr. Theriot told the Supervisor that her harassment of him was inappropriate and unwelcome, that her repeated touching and attempts to touch him were inappropriate and unwelcome, that her sexual advances towards him were inappropriate and unwelcome, and that her behavior towards him made him extremely uncomfortable.

104. The Supervisor responded that she did not have anything to apologize for and that Mr. Theriot owed her for his employment at the Hotel.

105. The Supervisor told Mr. Theriot that she had "pulled strings" to get him hired due to her sexual attraction to him.

106. The Supervisor told Mr. Theriot that she thought he "got" what was going on. The Supervisor communicated to Mr. Theriot that she thought he owed her sex because she had hired him.

107. On approximately April 9, 2025, Mr. Theriot told Patel that he had discussed the Supervisor's harassment with her and that the harassment had continued.

108. On approximately April 16, 2025, Mr. Theriot told Patel that he was considering filing a Charge of Discrimination with the EEOC.

-13-

109.    Patel told Mr. Theriot that he would reprimand the Supervisor.

110.    Patel did not reprimand the Supervisor or take any other action to address the harassment.

111.    Shortly after the April 16, 2025, meeting with Patel, Mr. Theriot did not know what to do; so he took four days off work due to the stress of dealing with the Supervisor's harassment and Defendants' total failure to address it.

### *Defendants cut Mr. Theriot's Hours*

112.    Before Mr. Theriot told Patel about his intent to file a Charge of Discrimination with the EEOC on April 16, 2025, Defendants had regularly scheduled Mr. Theriot to work forty hours per week.

113.    Shortly after Mr. Theriot told Patel about his intent to file a Charge of Discrimination with the EEOC on April 16, 2025, Defendants cut his hours in half.

114.    Despite cutting Mr. Theriot's hours in half, Defendants did not reduce the number of shifts he worked with the Supervisor.

115.    By reducing his hours, Defendants cut Mr. Theriot's pay approximately in half.

116.    Defendants' reduction of hours caused Mr. Theriot extreme financial hardship.

117. Defendants' reduction of Mr. Theriot's hours and the constant sexual advances and harassment by the Supervisor created an environment so intolerable that no reasonable person could be expected to remain.

118. On May 3, 2025, Defendants constructively discharged Mr. Theriot.

### The Defendants Knew about the Supervisor

119. At all relevant times, Defendants knew about the Supervisor's sexual harassment of Mr. Theriot.

120. Mr. Theriot frequently and repeatedly complained about the Supervisor's sexual harassment during his employment.

121. At all relevant times, the Supervisor's sexual harassment of Mr. Theriot was open, obvious, and clearly visible to Defendants.

122. At all relevant times, Defendants should have known about the Supervisor's sexual harassment of Mr. Theriot.

123. During Mr. Theriot's employment, a co-worker told Mr. Theriot that he, too, had been subjected to unwanted touching and comments about his appearance and sexual advances from the Supervisor.

124. During Mr. Theriot's employment, another coworker informed Mr. Theriot that the Supervisor had regularly harassed, propositioned, and inappropriately touched other employees.

125. The Hotel has received complaints from guests regarding the Supervisor's behavior.

126. At all relevant times, the Supervisor's pattern and practice of sexually harassing employees was known to all Defendants.

127. At all relevant times, the Supervisor's pattern and practice of sexually harassing employees was open, obvious, and readily visible to all Defendants.

128. At all relevant times, the Supervisor was, in fact, Mr. Theriot's supervisor, and she was empowered by Defendants to hire and fire Mr. Theriot, to determine his schedule and pay, to reprimand him, and to direct his activities during working hours.

129. Defendants' inaction in the face of the Supervisor's harassment of Mr. Theriot amounts to conscious indifference.

130. At all relevant times, Defendants knew and reasonably should have known that the Supervisor posed an unreasonable risk of harm to employees and guests with whom she came into contact.

131. Prior to the Supervisor's employment with Defendants, Defendants knew and should have known that the Supervisor had an extensive history of criminal conduct including, but not limited to, crimes involving sex, fraud, theft, and dishonesty.

132. Prior to the Supervisor's employment with Defendants, Defendants could have, upon conducting a reasonable search and investigation, discovered information regarding her history of criminal infractions and other related misconduct.

133. Defendants hired the Supervisor despite knowing, and unreasonably failing to discover, that she posed an unreasonable risk of harming employees and guests.

134. After Mr. Theriot's complaints, Defendants should have investigated the Supervisor and discovered any previously undiscovered prior misconduct and discharged the Supervisor.

135. No investigation or intervention was conducted and the sexual misconduct and assaults continued.

136. Defendants retained the Supervisor despite knowing, and/or unreasonably failing to discover, that she posed an unreasonable risk of harming employees and guests.

## COUNT I: SEXUAL HARASSMENT (TITLE VII)

137. Mr. Theriot incorporates paragraphs 1-136 as if fully realleged herein.

138. Mr. Theriot is a male.

139. Mr. Theriot is a member of the protected class of males.

140. At all relevant times, Mr. Theriot was qualified for the front desk position he held at the hotel.

141. Mr. Theriot was subjected to unwelcome sexual harassment by the Supervisor.

142. The Supervisor harassed Mr. Theriot because of his sex.

143. Mr. Theriot suffered damages and physical and emotional suffering due to the sexual harassment.

**COUNT II: HOSTILE WORKING ENVIRONMENT (TITLE VII)**

144. Mr. Theriot incorporates paragraphs 1-136 as if fully realleged herein.

145. Mr. Theriot is a male.

146. Mr. Theriot is a member of the protected class of males.

147. Mr. Theriot was subjected to unwelcome sexual harassment by the Supervisor.

148. The Supervisor harassed Mr. Theriot because he was male.

149. The Supervisor's sexual harassment of Mr. Theriot was severe and pervasive.

150. The Supervisor's sexual harassment of Mr. Theriot completely permeated the workplace and Mr. Theriot's employment with the Defendants.

151. The Supervisor's sexual harassment of Mr. Theriot was so severe and pervasive it altered the terms and conditions of his employment with Defendants.

152. The Supervisor's sexual harassment of Mr. Theriot was itself a term and condition of his employment with Defendants.

153. The Supervisor's sexual harassment of Mr. Theriot created a discriminatorily abusive working environment.

154. At all relevant times, including before and after Mr. Theriot's complaints, Defendants knew about the Supervisor's sexual harassment and took no action to stop it.

155. At all relevant times before and Mr. Theriot's complaints, Defendants should have known about the Supervisor's sexual harassment.

156. At all relevant times, Defendants were aware of the Supervisor's pattern and practice of harassing male employees at the Hotel and took no steps to prevent it.

157. Mr. Theriot suffered damages and physical and emotional suffering due to the hostile work environment.

## COUNT III: CONSTRUCTIVE DISCHARGE

158. Mr. Theriot incorporates paragraphs 1-136 as if fully realleged herein.

159. Between approximately March 31, 2025, and May 3, 2025, Defendants subjected Mr. Theriot to relentless sexual harassment.

160. Between approximately March 31, 2025, and May 3, 2025, Defendants subjected Mr. Theriot to repeated sexual assaults and batteries.

161. Between approximately March 31, 2025, and May 3, 2025, Defendants subjected Mr. Theriot to extreme sexual humiliation.

162. The Supervisor's relentless harassment, humiliation, battery, propositioning, and other sex-related misconduct directed towards or in the presence of Mr. Theriot rendered Mr. Theriot's working environment at the hotel intolerable.

163. Defendants' awareness and ratification of the Supervisor's conduct towards Mr. Theriot rendered Mr. Theriot's working environment intolerable.

164. Defendants' refusal to address the Supervisor's misconduct and directive to Mr. Theriot to complain to his harasser rendered Mr. Theriot's working environment intolerable.

165. Defendants' retaliatory cutting of Mr. Theriot's hours and, therefore, pay, rendered Mr. Theriot's working environment intolerable.

166. Given Mr. Theriot's intolerable and unsafe working environment, a reasonable person in his position would have felt compelled to resign.

167. Mr. Theriot suffered damages, physical and emotional suffering, lost wages, and other damages due to the constructive discharge.

### COUNT IV: RETALIATION (TITLE VII)

168. Mr. Theriot incorporates paragraphs 1-136 as if fully realleged herein.

169. Mr. Theriot's opposition to the Supervisor's sexual harassment, as frequently expressed to her throughout his employment, including on approximately April 9, 2025, was conduct protected by Title VII.

170. Each of Mr. Theriot's complaints to Patel regarding the Supervisor's sexual harassment throughout his employment were protected conduct under Title VII.

171. Mr. Theriot complained to Patel on April 16, 2025, regarding the sexual harassment and hostile working environment to which the Supervisor was subjecting Mr. Theriot.

172. Mr. Theriot's statement on approximately April 16, 2025, of his intent to file a Charge of Discrimination with the EEOC was protected under Title VII.

173. Mr. Theriot suffered an adverse action when Defendants cut his hours in half shortly after he told Patel about his intent to file a Charge of Discrimination with the EEOC.

174. Defendants cut Mr. Theriot's hours because he engaged in activity protected by Title VII.

175. Defendants also cut Mr. Theriot's hours in anticipation of his future engagement in protected activity under Title VII and in order to discourage him from following through with that protected activity.

176. Defendants' retaliatory cutting of Mr. Theriot's hours caused him extreme financial hardship.

177. Mr. Theriot suffered damages, physical and emotional suffering, lost wages, and other damages due to the retaliation.

**COUNT V: ASSAULT & BATTERY (O.C.G.A. §§ 51-1-13 & 51-1-14)**

178. Mr. Theriot incorporates paragraphs 1-136 as if fully realleged herein.

179. On multiple occasions from approximately March 31, 2025, until approximately May 3, 2025, the Supervisor touched Mr. Theriot's person.

180. On multiple occasions from approximately March 31, 2025, until approximately May 3, 2025, the Supervisor attempted to commit unwelcome sexual touches upon Mr. Theriot's person.

181. Every touch of Mr. Theriot by the Supervisor was unwelcome.

182. Every attempted touch of Mr. Theriot by the Supervisor was unwelcome.

183. Every touch of Mr. Theriot by the Supervisor was offensive.

184. Every attempted touch of Mr. Theriot by the Supervisor was offensive.

185. Every touch of Mr. Theriot by the Supervisor was sexual in nature and intent.

186. Every attempted touch of Mr. Theriot by the Supervisor was sexual in nature and intent.

187. Every touch of Mr. Theriot by the Supervisor caused Mr. Theriot extreme distress.

188. Every attempted touch of Mr. Theriot by the Supervisor caused Mr. Theriot extreme distress.

189. Every touch of Mr. Theriot by the Supervisor caused Mr. Theriot physical discomfort.

190. Every attempted touch of Mr. Theriot by the Supervisor caused Mr. Theriot physical discomfort.

191. Every attempted touch of Mr. Theriot by the Supervisor caused Mr. Theriot to apprehend unlawful, violent touching on his person by the Supervisor.

192. Every touch of Mr. Theriot by the Supervisor occurred during and/or within the scope and course of the Supervisor's employment for Defendants.

193. Every attempted touch of Mr. Theriot by the Supervisor occurred during and/or within the scope and course of the Supervisor's employment for Defendants.

194. As a direct and proximate result of the Supervisor's unwanted touching, Mr. Theriot has suffered pain, damage, and other physical and mental injury.

195. As a direct and proximate result of the Supervisor's attempted unwanted touching, Mr. Theriot has suffered pain, damage, and other physical and mental injury.

## COUNT VI: NEGLIGENT HIRING

196.    Mr. Theriot incorporates paragraphs 1-136 as if fully realleged herein.

197.    At all relevant times, Defendants had a duty to exercise ordinary care not to hire an employee that Defendants knew or should have known would pose a risk of harm to other employees, such as Mr. Theriot.

198.    When Defendants hired the Supervisor, it was reasonably foreseeable from the Supervisor's tendencies and/or propensities that the Supervisor would sexually harass, assault, and batter other employees.

199.    Before Defendants hired the Supervisor, they knew or should have known that the Supervisor was unfit for the role for which she was hired.

200.    Defendants were wanton and reckless with respect to their failure to conduct basic diligence regarding the Supervisor's fitness for the position for which she was hired.

201.    Before Defendants hired the Supervisor, Defendant knew or willfully failed to discover that the Supervisor had a record of misconduct rendering her unfit for the position.

202.    Before Defendants hired the Supervisor, Defendants knew or willfully failed to discover information showing that, if hired, the Supervisor would likely engage in sex-related misconduct, including harassment.

203. By hiring the Supervisor despite knowing of the Supervisor's tendencies and propensities to sexually harass, assault, and batter other employees, Defendants breached their duty of care owed to other employees, such as Mr. Theriot.

204. But for Defendants breach of the duty of care owed to their employees with respect to the hiring of the Supervisor, Mr. Theriot would not have been sexually harassed by the Supervisor.

205. Defendants' breach of the duty of care owed to their employees with respect to the hiring of the Supervisor proximately caused Mr. Theriot harm by way of sexual harassment, *inter alia,* assault, battery, and further damage and injury.

## COUNT VII: NEGLIGENT RETENTION

206. Mr. Theriot incorporates paragraphs 1-136 as if fully realleged herein.

207. At all relevant times, Defendants had a duty to exercise ordinary care not to retain an employee that Defendants knew or should have known would pose a risk of harm to other employees, such as Mr. Theriot.

208. Prior to and for the entirety of Mr. Theriot's employment at the Hotel, it was reasonably foreseeable from the Supervisor's tendencies and/or propensities that the Supervisor would sexually harass, assault, and batter other employees.

209. Prior to and for the entirety of Mr. Theriot's employment at the Hotel, Defendants had actual knowledge of the Supervisor's tendencies and/or propensities to sexually harass, assault, and batter other employees.

210. Prior to and for the entirety of Mr. Theriot's employment at the Hotel, Defendants knew or should have known that the Supervisor was unfit for the role for which she was hired and should not be retained.

211. Defendants were wanton and reckless with respect to their retention of the Supervisor after having actual knowledge of her tendencies and propensities of sexually harassing employees, including Mr. Theriot.

212. Defendants were wanton and reckless by retaining the Supervisor after having actual knowledge that the Supervisor had a record of sex-related misconduct.

213. By retaining the Supervisor despite knowing of the Supervisor's tendencies and propensities to sexually harass, assault, and batter other employees, as well as her repeat acts of sexually harassing, assaulting, and battering other employees, including Mr. Theriot, Defendants breached their duty of care owed to other employees, such as Mr. Theriot.

214. But for Defendants' breach of the duty of care owed to their employees with respect to the retention of the Supervisor, Mr. Theriot would not have been sexually harassed by the Supervisor.

215.   Defendants' breach of the duty of care owed to their employees with respect to the retention of the Supervisor proximately caused Mr. Theriot harm by way of sexual harassment, *inter alia,* assault, battery, and further damage and injury.

### COUNT VIII: NEGLIGENT SUPERVISION

216.   Mr. Theriot incorporates paragraphs 1-136 as if fully realleged herein.

217.   At all relevant times, Defendants had a duty to exercise ordinary care in the supervision of the Supervisor.

218.   At all relevant times, it was reasonably foreseeable from the Supervisor's tendencies and/or propensities that the Supervisor would sexually harass, assault, and batter other employees.

219.   At all relevant times, it was reasonably foreseeable from previous similar incidents that the Supervisor would sexually harass, assault, and batter other employees.

220.   At all relevant times, Defendants knew or should have known that the Supervisor was unfit for the role for which she was hired.

221.   Defendants were wanton and reckless with respect to their failure to employ any reasonable measures to supervise the Supervisor.

222.   At all relevant times, Defendant knew or willfully failed to discover that the Supervisor had a record of misconduct rendering her unfit for the position.

223.    At all relevant times, Defendants knew or willfully failed to discover information showing that, if hired, the Supervisor would likely engage in sex-related misconduct, including harassment.

224.    By failing to supervise the Supervisor despite knowing of the Supervisor's tendencies and propensities to sexually harass, assault, and batter other employees, Defendants breached their duty of care owed to other employees, such as Mr. Theriot.

225.    By failing to supervise the Supervisor despite knowing of previous similar incidents of sexual harassment and sex-related misconduct by the Supervisor, Defendants breached their duty of care owed to other employees, such as Mr. Theriot.

226.    But for Defendants breach of the duty of care owed to their employees with respect to the supervision of the Supervisor, Mr. Theriot would not have been sexually harassed by the Supervisor.

227.    Defendants' breach of the duty of care owed to their employees with respect to the supervision of the Supervisor proximately caused Mr. Theriot harm by way of sexual harassment, *inter alia,* assault, battery, and further damage and injury.

WHEREFORE, Plaintiff demands judgment as follows:

A. That this Court declare that Defendants' actions, policies, and practices complained of herein violate the rights of Plaintiff secured by federal and state law;

B. An order from the Court enjoining Defendants from future discriminatory acts relative to discrimination based on sex and relative to engaging in statutorily protected activity;

C. Compensatory damages and general damages for mental and emotional suffering caused by Defendants in an amount to be determined by the enlightened conscience of an impartial jury;

D. Punitive damages for Defendants' willful, malicious, intentional, and deliberate acts alleged herein in an amount to be determined by the enlightened conscience of an impartial jury;

E. Special damages for emotional distress in an amount to be determined by the enlightened conscience of an impartial jury;

F. Back pay, including, but not limited to lost wages and all other concomitants of employment wrongfully denied the Plaintiff;

G. Front pay, including, but not limited to, lost future wages and all other concomitants of employment wrongfully denied the Plaintiff;

H. Reasonable attorneys' fees, costs and expenses of litigation;

I. Trial by jury as to all claims and issues;

-30-

J.  Prejudgment interest at the rate provided under law;

K.  Such other relief for the Plaintiff as the Court determines just, warranted, and

reasonable.

Respectfully submitted this 12th day of September 2025.

**HALL & LAMPROS, LLP**

/s/ *Adam T. Mills*
Adam T. Mills
Georgia Bar No. 123930
Christopher B. Hall
Georgia Bar No. 318380
300 Galleria Pkwy
Suite 300
Atlanta, GA 30339
T: (404) 876-8100
chall@hallandlampros.com
adam@hallandlampros.com

*Attorneys for Plaintiff*
